UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                          :
CURTIS SCOTT,                             :        CASE NO. 1:07-cv-2048
                                          :
              Plaintiff,                   :
                                          :
vs.                                       :        OPINION & ORDER
                                          :        [Resolving Doc. 33].
CITY OF CLEVELAND, *et. al.*              :
                                          :
              Defendant.                   :
                                          :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this opinion and order, the Court considers the Defendants' motion for summary judgment. For the reasons stated below, the Court the **GRANTS IN PART** and **DENIES IN PART** the motion.

## I. Background

In this case, the plaintiff makes claims that his constitutional rights were violated in an arrest and purported assault and malicious prosecution by certain of the defendants. Construing the facts in the light most favorable to the Plaintiff, the facts are as follows. On November 9, 2005, Curtis Scott, a college student, exited the car of his girlfriend and the mother of his child, Marie Hall, and stood on the street opposite his home. [Doc. 22, Ex. 8 at 16; Doc 24, Ex. 5]. He began walking toward his home and his hands, not in his waistband, were either to the front or the side of him. [Doc. 22, Ex. 8, at 24; Doc. 24, Ex. 5].[1]  As he was walking, he saw a car slow down, and the driver of

_____

[1] The Defendant attempts to state that Scott's testimony that he was unsure whether his hands were to the front
(continued...)

Case No. 1:07-cv-2048
Gwin, J.

the car asked him "do you see something you want?." [Doc. 22, Ex. 8 at 15-16; Doc 24, Ex. 5].  He

responded "no" and then saw the driver reaching for a gun.  [Doc. 22, Ex. 8 at 16; Doc 24, Ex. 5].

Scott, who had been robbed and beaten one month earlier, testified that upon seeing the gun, he fled.

[Doc. 22, Ex. 8 at 16; Doc 24, Ex. 5].

According to Scott, neither the driver nor passenger in the car identified themselves as

Cleveland Police.  [Doc. 22, Ex. 8 at 16; Doc 24, Ex. 5].  Lieutenant Barrow, the superior officer at

the scene, speculated that he thought the Plaintiff must have figured out they were police, but he did

not state that either had identified themselves. [Doc. 22, Ex. 7 at 42]. According to Scott and his

neighbor, Al Russell, both officers were in plainclothes, both wearing large jackets, and neither's

badge was visible. [Doc. 22, Ex. 8 at 26-27]; Doc. 24, Ex. 6].

After the Plaintiff Scott began running, Detective Gibson followed on foot and reached him

as he tried to climb a fence; Detective Gibson threw him to the ground. [Doc. 22, Ex. 3 at 22-23, Ex.

8 at 28].  Once on the ground, Detective Gibson began "beating [the Plaintiff] up," punching him on

his arm, and hitting him in the head four or five times. [Doc. 22, Ex. 8 at 30, Ex. 3 at 24; Doc. 24,

Ex. 6; Doc. 23, Ex. 10 at 2].  All the while, Scott was in a ball, yelling, "Just take it! take it!" and

"Help me Ma!" [Doc. 22, Ex. 8 at 17; Doc. 24, Ex. 3].

The Plaintiff Scott sustained bruising to his left eye and right shoulder. [Doc. 22, Ex. 3 at 27;

Ex. 8 at 30].  He also urinated on himself in the stress of the moment. [Doc. 22, Ex. 8 at 18; Doc. 24,

Ex. 6].  The Plaintiff Scott states that he did not know that Detective Gibson was a member of the

Cleveland Police Department until a neighbor walked up and Detective Gibson identified himself.

---

[1]/(...continued)
or the side shows contradicts his testimony that his hands were not in his waistband.  These two statements do not
contradict each other, and the Court accepts both as true.

Case No. 1:07-cv-2048
Gwin, J.

[Doc. 22, Ex. 8 at 46; Doc. 24, Ex. 6 at 2].

After the tussle on the ground, the Detective Gibson handcuffed Scott and Sergeant Barrow came upon the scene. Detective Gibson told the Plaintiff's mother that he had hit her son and he would do it again. [Doc. 22, Ex. 8 at 18; Doc. 24, Ex. 3]. Detective Gibson arrested the Plaintiff for drug abuse and resisting arrest.[2] [Doc. 23, Ex. 8]. As the officers took Scott to a squad car, one stated "you may not want to search him since he urinated on himself." [Doc. 22, Ex. 8 at 18-19; Doc. 24, Ex. 3]. Scott rode in the squad car another 20-30 minutes while the car picked up other arrested persons before proceeding to booking. [Doc. 22, Ex. 8 at 19].

The squad car took Scott to the Fourth District and after fingerprinting Scott, someone placed Scott in a room with a desk and a chair. [Doc. 22, Ex. 8 at 20]. Thereafter, Detective Gibson came in and asked him questions about why he ran away. [Doc. 22, Ex. 8 at 20]. Scott explained that he had not known they were police officers and had been robbed at gunpoint the month before. [Doc. 22, Ex. 8 at 20]. Then, Detective Gibson told him to take off his clothes and squat down. [Doc. 22, Ex. 8 at 20]. Detective Gibson asked him to explain why he was wet, and Scott told him it was because he had urinated on himself. [Doc. 22, Ex. 8 at 20].

After that, Scott went to his cell. [Doc. 22, Ex. 8 at 20]. He had visible bruising, but he never asked for medical treatment and did not receive any. [Doc. 22, Ex. 8 at 30-31]. Scott remained in jail for two days, without bond. [Doc. 24, Ex. 3]. He sought medical treatment upon being released from custody. [Doc. 24, Ex. 3]. He was charged with resisting arrest, but the Judge

---

[2]/Detective Gibson's report indicated that Scott allegedly threw away a bag of marijuana as he jumped over the fence. He arrested the Plaintiff on that charge as well as resisting arrest, but as the Plaintiff asserts that he did not have any marijuana. The Plaintiff was never charged with possession of marijuana, and the Defendants point to no evidence that they confiscated a bag of marijuana such as an evidence receipt. For the purposes of this motion, the Court assumes that Scott did not possess any marijuana on that day. [Doc. 24, Ex. 6].

Case No. 1:07-cv-2048
Gwin, J.

dismissed the case after the officers failed to appear for the case on a number of occasions. [Doc. 24, Ex. 3; Doc. 22, Ex. 9].  There is no indication that he was also charged with illegal possession of drugs.  [Doc. 24, Ex. 3; Doc. 22, Ex. 9].

The Plaintiff sues the City of Cleveland, Detective Gibson, Lieutenant Barrow, Officer Rasberry, who was part of the undercover unit, and Officer McGrath.  He claims violations of his constitutional rights, including his Fourth, Fifth, Eighth, and Fourteenth Amendment constitutional rights.[3/]  He further asserts state law claims of false arrest and imprisonment, assault and battery, malicious prosecution, abuse of process, negligence, and gross negligence.

## II. Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

---

[3/] In his opposition to summary judgment, the Plaintiff has failed to argue any facts or law regarding the Eighth Amendment claims.  The Court assumes he has abandoned this argument.  Even if he did not, however, the Court would find no violation of the Eighth or Fourteenth Amendment.  While the Eighth Amendment's prohibition of cruel and unusual punishment does not apply to detainees, detainees have a right to adequate medical treatment, analogous to the Eighth Amendment right that prisoners enjoy, under the Fourteenth Amendment Due Process clause. *Weaver v. Shadoan,* 340 F.3d 398, 410 (6th Cir. 2003). Officials violate detainees' due process rights when they "exhibit a deliberate indifference to the medical needs of the detainees that is tantamount to an intent to punish." *Danese v. Asman,* 875 F.2d 1239, 1243 (6th Cir. 1989).  While the Plaintiff suffered bruising, he testified that he did not ask for medical care and he appeared to be fine.   The officials' state of mind, therefore, could not be one of deliberate indifference to the Plaintiff's needs.  For a Fourteenth Amendment violation, the official's requisite mental state would need to be comparable to "subjective recklessness."   *See Hadix v. Johnson,* 367 F.3d 513, 525 (6th Cir. 2004).  Such was not the case here, and the Plaintiff cannot prove any violation of the Fourteenth Amendment.

Case No. 1:07-cv-2048
Gwin, J.

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party, however, is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586.  Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); see also *Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

**III. Analysis**

Case No. 1:07-cv-2048
Gwin, J.

## A. § 1983 Claims

### 1. The City of Cleveland and the Individual Officers in their Official Capacities

The Plaintiff brings § 1983 claims against the City of Cleveland and the individual officers in their official capacities. The Court construes a § 1983 claim against a city official in his or her official capacity as a claim against the City entity itself. *Shamaeizadeh v. Cunigan,* 338 F.3d 535, 556 (6th Cir. 2003).

Under § 1983, a municipality cannot be held liable for unconstitutional actions of its employees under a theory of *respondeat superior*. *See, e.g., City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *Monell v. Department of Soc. Servs. of City of New York,* 436 U.S. 658 (1978). To establish municipal liability under to § 1983, a plaintiff must show an unconstitutional action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or a "constitutional deprivation[] visited pursuant to governmental 'custom' even though such a custom has not received formal approval." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). A municipality will only be liable under § 1983 for the inadequacy of police training "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Harris,* 489 U.S. at 389.

The Defendants move for summary judgment on the § 1983 claims against the city of Cleveland and the individual officers in their official capacities. The Defendants argue that the Plaintiff Scott cannot show any conduct that is attributable to the city or any link between Cleveland's actions and the alleged deprivation of his rights. The Plaintiff states that Detective Gibson's failure

-6-

Case No. 1:07-cv-2048
Gwin, J.

to recall the last time he had use of force training shows that the municipality is liable under an inadequacy of training theory. [Doc. 22, Ex. 3 at 43-46].

Detective Gibson testified that he received this training once-yearly, and while he could not recall the color-code of the force that he had exerted against the Plaintiff, he stated he knew when he could exert specific amounts of force. [Doc. 22, Ex. 3 at 44].  Cleveland trains its officers in use of force once yearly, and the fact that Detective Gibson could not recall the month in which he received this training does not establish deliberate indifference.  The Plaintiff points to no evidence that Cleveland actually failed in giving Detective Gibson this training nor does he argue the training that Cleveland provided was inadequate.  Therefore, the Court grants summary judgment to the City of Cleveland and the individual officers in their official capacities on the § 1983 claims.

2. The Individual Officers in their Individual Capacities

a. Chief McGrath

To establish a § 1983 claim against a public official in his personal capacity, a plaintiff must show that the official either actively participated in the alleged unconstitutional conduct or "implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate." Leary v. Daeschner, 349 F.3d 888, 903 (6th Cir. 2003).  The Defendants move for summary judgment for the § 1983 claim against Chief McGrath arguing that he was neither at the scene nor does any evidence show he implicitly authorized the alleged unconstitutional conduct.  The Plaintiff has not argued any facts to dispute this.  As such, the Court grants summary judgment to Chief McGrath.

b. Detective Rasberry

The Defendants move for summary judgment for Detective Rasberry, as the Plaintiff has

Case No. 1:07-cv-2048
Gwin, J.

admitted he was only on the scene for a few moments after the Plaintiff was already arrested and was not present at the Plaintiffs' booking. [Doc. 22, Ex. 8 at 38-40]. As a general rule, mere presence at the scene of the alleged Fourth Amendment violation, without showing direct responsibility for the action, is not enough to give rise to §1983 liability. *See* *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). The Plaintiff does allege any facts that show Detective Rasberry had any direct responsibility for the alleged unconstitutional conduct. Therefore, the Court grants summary judgment to Detective Rasberry.

*c. Sergeant Barrow*

Sergeant Barrow was the supervising officer at the scene. He sat in the car while Detective Gibson pursued the Plaintiff on foot and he did not see the Plaintiff or Detective Gibson again until Detective Gibson was placing the Plaintiff Scott in handcuffs. [Doc. 22, Ex. 7 at 14-16]. To prove supervising officer liability, the Plaintiff must show the supervising officer either actively participated in the alleged unconstitutional conduct or "implicitly authorized, approved, or knowingly acquiesced" to the conduct. *Leary*, 349 F.3d at 903.

Even viewing the facts most favorable to the Plaintiff, Sergeant Barrow neither participated in nor acquiesced any unconstitutional conduct. There is no evidence that Sergeant Barrow knew or could have known that Detective Gibson would punch the Plaintiff in the head in his foot pursuit. Moreover, the Plaintiff does not allege that Sergeant Barrow knew about or was present for the subsequent strip search at the station. Finally, while Sergeant Barrow came on the scene after Detective Gibson arrested him, the plaintiff does not point to any evidence that would indicate that he either participated in or acquiesced to this allegedly illegal arrest.

Furthermore, even if Sergeant Barrow participated in this allegedly unconstitutional arrest,

Case No. 1:07-cv-2048
Gwin, J.

Detective Gibson indicated that he had seen the Plaintiff discard a bag of marijuana.  A reasonable officer in his situation would, therefore, believe that the arrest was objectively reasonable and not unconstitutional, entitling him to qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005).

*d. Detective Gibson*

Defendants move for summary judgment on behalf of Detective Gibson on the grounds that he is entitled to qualified immunity.  State actors faced with a civil suit under § 1983 may be immune from liability for damages, but they enjoy a qualified, not absolute, immunity *Harlowe v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Qualified immunity "protect[s] officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official activity." *Butz v. Economou*, 438 U.S. 478, 506 (1978).  The qualified immunity analysis involves two steps: (1) whether, considering the allegations in a light most favorable to the non-moving party, the defendant violated a constitutional right, and (2) whether that right was clearly established. *Saucier*, 533 U.S. at 201.  The Sixth Circuit sometimes adds a third prong to the *Saucier* test, examining "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." " Estate of Carter, 408 F.3d at 311 n.2.  "Where the right involved is clearly established, however, it can often be inferred that the conduct involved is objectively unreasonable." *Srisavath v. City of Brentwood*, 243 Fed. Appx. 909, 912 (6th Cir. 2007).

The Plaintiff alleges that Detective Gibson committed several constitutional violations, including illegally stopping and arresting him, using excessive force, and subjecting him to an unreasonable strip search, in violation of the Fourth Amendment.  The Court will consider each

Case No. 1:07-cv-2048
Gwin, J.

alleged constitutional violation in turn.

1. The Stop of the Plaintiff

The Court finds that Detective Gibson's initial stop of the Plaintiff violated the Fourth Amendment.  Consistent with the Fourth Amendment, a police officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is underway.  *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  While "reasonable suspicion" is a less demanding standard than probable cause, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The officer must be able to give more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity.  *Terry*, 392 U.S. at 27.

Police officers have reasonable suspicion to initiate an investigatory stop of an individual who flees identified police officers in a high crime area.  *See Wardlow v. Illinois*, 528 U.S. 119 (2000).  In this case, however, the facts taken in the light most favorable to the Plaintiff do not support reasonable suspicion.  First, the Court must assume that Detective Gibson's badge was not visible until after the Plaintiff was arrested and that neither officer identified himself.  Second, the Court must assume the Plaintiff's hands were not in his waistband and therefore Detective Gibson had no indication the Plaintiff was armed.  As such, the Court must consider whether there was reasonable suspicion, in a high crime area, to pursue an individual who ran away from unidentified men, one of whom was carrying a weapon.[4]

_____

[4]Defendant argues that Detective Gibson's actions were reasonable, stating that a reasonable officer would have perceived that Scott was fleeing from the police.  The fact that Detective Gibson either assumed Scott had identified him as a police officer based on a visible badge or that he had identified himself as police is contested–the Court cannot accept it as true.

-10-

Case No. 1:07-cv-2048
Gwin, J.

Nevertheless, the Plaintiff's flight is a factor that could support reasonable suspicion, even though the police did not identify themselves. In *United States v. Dotson*, the Sixth Circuit held that a defendant's flight, coupled with reasonable suspicion that the defendant was involved in a crime, gave the officers probable cause to arrest the defendant. 49 F.3d 227, 231 (1995). In that case, however, the police had approached the defendant in his car and asked for identification without identifying themselves. In this case, the Detective Gibson had readied his weapon.

The Court relies on "certain commonsense conclusions about human behavior" in conducting a *Terry* analysis. *United States v. Cortez*, 449 U.S. 411, 418 (1981). The Court considers that an individual who asks for identification would seem to indicate a show of authority whereas an individual brandishing a weapon may not. Thus, the commonsense conclusion is that it may have been reasonable for the Plaintiff Scott to flee upon being confronted with an unidentified, plainclothes man holding a gun. Nevertheless, the Court considers what a reasonable officer knowing these facts would conclude, not whether it was reasonable for the Plaintiff to act as he did. *See, e.g.*, *Dotson, 49 F.3d at 231*. In that analysis, the Court finds, consistent with *Watson*, that Scott's flight offers some support for a reasonable suspicion to effectuate a *Terry* stop.

While Scott's flight from the unidentified police officers would be a factor that could help support reasonable suspicion, this flight in a high crime area alone is not enough to create reasonable suspicion. *Illinois v. Wardlow* rested its decision on two facts that created reasonable suspicion: (1) "respondent's presence in an area of heavy narcotics trafficking; and "*unprovoked* flight *upon noticing the police*." *Wardlow, 528 U.S. at 124*. The key differences between *Wardlow* and the instant case are that the Plaintiff's flight was neither unprovoked nor was it upon noticing the police. The defendant in *Wardlow* ran from uniformed police officers. As such, there was no question of his

Case No. 1:07-cv-2048
Gwin, J.

identifying them as police.  *Id.* at 121.  The Court considers that an individual fleeing in response to an unidentified man holding a weapon lessens the suspiciousness of the Plaintiff's flight.  *C.f.* *United States v. Caruthers*, 458 F.3d 459, 467-68 (6th Cir. 2006) (noting the Defendant testified that he recognized the police officer as a police).

Moreover, the Court finds that the Plaintiff Scott had a clearly established right to not be pursued and stopped by the police absent reasonable suspicion.  For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).  "A right is clearly established when 'the reasoning, though not the holding,' of a prior court of appeals decision puts law enforcement officials on notice, or when the 'premise' of one case 'has clear applicability' to a subsequent set of facts." *Feathers v. Aey*, 319 F.3d 843, 850 (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)).

*Terry* requires reasonable suspicion for investigative detentions, and this has been clearly established since 1968.  Moreover, *Wardlow*, a Supreme Court case from 2001, has clear applicability to these facts.  528 U.S. 119.  That case turned on the fact that the flight was evasive behavior. *Id. at 124-25*.  In this case, by contrast, there was provoked flight and before any police identified themselves.  The premise and holding in *Wardlow* puts an officer confronted with the facts here on notice that he does not have reasonable suspicion in a high crime area to pursue an individual running from a him when he is holding a gun and has not identified himself as a police officer.  Finally, the Court notes that what the officer did not was objectively unreasonable in light of the facts offered by the Plaintiff.

Detective Gibson testified that he did identify himself as police, and that the Plaintiff Scott had

Case No. 1:07-cv-2048
Gwin, J.

his hand in his waistband, leading Detective Gibson to believe he was carrying a weapon.  [Doc. 22, Ex. 3 at 17-18]  This conflicting testimony presents genuine issues of material fact and a need for credibility determinations, such that a the Court cannot grant summary judgment on the reasonableness of the *Terry* stop.

2. The Force Used to Subdue the Plaintiff

The Court analyzes claims of excessive force under the Fourth Amendment's reasonableness standard.  *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).  "An officer making an investigative stop or arrest has the right to use some degree of physical coercion or threat thereof to effect it."  *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (quotation omitted).  The Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Because the Court assumes there was no indication that Scott was carrying a weapon, and that he did not have any marijuana, the Court does not find that either the crime at issue was severe or the Plaintiff posed any immediate danger to the officer or others.  Officer Gibson had no right to conduct an investigatory stop of the Plaintiff.

Even if Detective Gibson had sufficient reasonable suspicion to conduct an investigatory stop of the Plaintiff or probable cause to arrest him, Detective Gibson used an excessive degree of physical coercion.  While the Plaintiff Scott was in flight, and therefore some degree of coercion would have been necessary, Detective Gibson punched the Plaintiff four or five times in the face once he had already succeeded in bringing the Plaintiff down to the ground. [Doc. 22, Ex. 3 at 24; Doc. 23, Ex. 10; Doc. 24, Ex. 6].

-13-

Case No. 1:07-cv-2048
Gwin, J.

The Plaintiff testified that he did nothing, he was balled up, and yelling to his mother to help him and to Detective Gibson to "take it" (believing he was a robber). [Doc. 22, Ex. 8 at 17, 28, 30]. Detective Gibson testified that punching him was necessary to restrain him. [Doc. 22, Ex. 3 at 24]. This creates a genuine issue of material fact, appropriate for a jury.  *See* *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687-88 (6th Cir. 2006)(denying qualified immunity where Plaintiff testified that the police officers hit her once she was already on the ground, even though the Plaintiff refused to produce her hands for cuffing, once the Plaintiff was subdues, the officers could not continue to use force).

Finally, the Court notes that the right to be free from excessive force both generally and during an investigatory stop is clearly established constitutional law.  *Id; Floyd v. City of Detroit*, 518 F.3d 398 (6th Cir. 2008). As part of this analysis, the Court considers "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 222.  A reasonable officer would recognize that throwing an individual on the ground and punching him, in the absence of reasonable suspicion to conduct a *Terry* stop, is unlawful.  A reasonable officer would also recognize that punching an individual who was not resisting arrest is unlawful.  *See* *Shreve*, 453 F.3d at 687. Again, the testimony in this case presents factual questions that a jury must decide.

3. The Arrest

In considering the defendant's motion for summary judgment, the Court must assume that the Plaintiff did not discard a bag of marijuana.  Further, as stated above, the Plaintiff Scott testified that he yelled and was in a ball while the Detective punched him.  Viewing these facts in the light most favorable to Scott, Detective Gibson did not have probable cause to arrest the Plaintiff.

Case No. 1:07-cv-2048
Gwin, J.

The Plaintiff's right to be free from arrest absent probable cause is a clearly established right.

*Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997).  Again, this is a case that turns on many, material factual issues.  Detective Gibson's arrest of the Plaintiff would not have violated the Fourth Amendment and would have been reasonable had either the Plaintiff resisted arrest or discarded a bag of marijuana.  A jury must decide this question.

4. The Strip Search

The Plaintiff testified that Detective Gibson strip searched him at the station.  Detective Gibson denies this.  The Defendant argues that this strip search was constitutional based on the facts the Court cannot accept as true in this opinion.  If a jury found the Plaintiff discarded a marijuana bag as he fled the officers, and if a jury found Detective Gibson had an individualized suspicion that the Plaintiff was concealing contraband, a strip search would have not violated the constitution. *See* *Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir. 1989).  However, the existence of the marijuana bag is in dispute.  Moreover, Detective Gibson did not testify that he had any individualized suspicion that Scott was concealing contraband.  The Court has already found that construing the facts in the light most favorable to the Plaintiff, the arrest in this case was without probable cause.  A strip search based on an arrest without probable cause and where there was no indication the individual was concealing contraband or was dangerous violates the Fourth Amendment. *See* *id.*

Moreover, the Plaintiff's right to be free from a strip search in these circumstances is clearly established law. *See* *id.*  Again, this issue hinges on disputed facts.  Had the Plaintiff violently resisted arrest or possessed drugs, then the strip search would have been constitutional and the Defendant would be entitled to qualified immunity.

**B. State Law Claims**

-15-

Case No. 1:07-cv-2048
Gwin, J.

The Plaintiff also sues the Defendants for several state law claims.  These include false arrest and imprisonment, assault and battery, malicious prosecution, abuse of process, negligence and gross negligence.  O.R.C. § 2744.02 gives the City of Cleveland immunity from liability in connection with its performance of a governmental or proprietary function, and O.R.C. § 2744.03 gives municipal employees immunity from liability for acts performed in connection with a governmental or proprietary function.  The provision of police services is a governmental function.  O.R.C. §2744.01(C)(1).  While there are some narrow exceptions to these grants of immunity, the Plaintiff has failed to point to any that would prevent the City of Cleveland or its officers from having immunity in any of the state-law claims that he alleges against them.  Therefore, the Court grants summary judgment to the Defendants on all state law claims.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** summary judgment to the City of Cleveland, Chief McGrath, Detective Rasberry, and Sergeant Barrow on all claims, and **GRANTS** summary judgment to Detective Gibson on all state law claims, but **DENIES** summary judgment to Detective Gibson on the § 1983 claims.

IT IS SO ORDERED.


Dated: May 13, 2008                          s/   James S. Gwin
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE